# Murrell v. Commonwealth.

(Decided Oct. 31, 1933.)

R. B. BIRD, J. J. FELTON and J. C. BIRD for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

L. V. Murrell was jointly indicted with the officers and employees of the People's Bank of Mt. Vernon, Ky., for a conspiracy to cheat and defraud the said bank. He was convicted and sentenced to two years in the penitentiary. He appeals. There is no demurrer to the indictment in the record, and we are not called upon to pass on the sufficiency of the indictment. The only points urged for reversal are: (a) Insufficiency of the evidence; and (b) the court erred in refusing a continuance.

The facts disclosed by the record are in substance these: In April, 1930, the People's Bank of Mt. Vernon, Ky., became insolvent and closed its doors and went into process of liquidation. A. M. Hiatt, cashier of the Citizens' Bank of Broadhead, Ky., was appointed liquidating agent of the Mt. Vernon bank soon after it closed. The records of the bank disclose many gross and fraudulent irregularities in the transaction of the bank's business, consisting of switching of accounts and juggling figures for the purpose of falsifying the records to conceal the frauds of the officers and employees of the bank. Appellant had no connection with the bank other than a customer. He had been a customer of the bank for about 15 years, and had transacted the

usual business with it, such as depositing and borrowing money, etc., and running a general checking account. The principle schemes resorted to by the employees of the bank were the switching of savings accounts to checking accounts.

It was testified by one of the employees of the bank that, when they switched a saving account to a checking account, they would take the saving account sheet from the ledger or tray and place it in the back end of the bank, so that, if the bank examiners should appear and examine the records, the examiner would find no record of such saving account, and in this way the books would balance. This method was resorted to in a large number of accounts aggregating more than $58,000. According to the records kept by the bank, on November 4, 1929, appellant had received a credit of $700, which had been switched from the saving account of J. S. Southard, and placed to the credit of the appellant. But there is no evidence conducing to show that the appellant had any knowledge of this transaction. The commonwealth bases its prosecution upon the fact as shown by the bank records, that within the space of time between September 20, 1928, and November 4, 1929, appellant made only one deposit of $20, which was on February 7, 1929, but during this space of time he continued to draw checks on the bank in the aggregate of several thousand dollars, which were paid, and without having deposited any funds in the bank.

It is insisted for the commonwealth that the fact that appellant continued to draw checks on the bank which he knew were being paid, and having made no deposit to cover same, that this circumstance is sufficient to show that appellant was in conspiracy with the employees of the bank to embezzle the funds. While it is true that the records kept by the bank disclose that appellant only made the one $20 deposit during the time above stated, it is testified by appellant that during this time he deposited approximately $8,000 in this bank. Appellant testified that during the 15 years he had lived at Mt. Vernon, and during the time he was a customer of the Mt. Vernon bank, he was engaged in the timber business, and sold to the Wood Mosaic Company of Louisville a large amount of timber or timber products, and received therefor from time to time various checks which he deposited in the Mt. Vernon bank,

except one check for $200, which was cashed in Louisville. He testified that previous to his trial he went to Louisville and secured an itemized list of these checks from the bookkeeper of the Wood Mosaic Company. Using this list to refresh his memory, he detailed a long list of checks in various sums totaling several thousand dollars which he had deposited in the Mt. Vernon bank between January 2, 1928, and February 24, 1930, just prior to the closing of the bank. He stated that he wrote his name across the back of each check and gave it to the cashier, or other employees of the bank, for the purpose of having same placed to his credit. In this he is uncontradicted, except that the bank records do not disclose that he made any such deposits. The record further discloses that appellant had borrowed money of the bank, executing his notes for same. He admits making two of the notes, one $50 and one $902.10, but denies any knowledge of the other notes, and denies that he signed any other. His evidence relating to the notes is uncontradicted. He says that he thought he had paid the note for $902.10, or offered to pay it, and the cashier told him to let it remain in the bank as an asset, and, in the event he should overdraw his account, the note would take care of such overdraft. When the bank closed, appellant had an overdraft in the sum of $345. It is further shown by the record that appellant is illiterate, cannot read or write, except merely write his name and read figures. Appellant admits, however, that at the time he deposited the various checks which he received from the Wood Mosaic Company he received no deposit slips or other receipts therefor, and never had any passbook. It must be admitted that this was rather an unusual circumstance. But this depicts the fraudulent and iniquitous manipulations of the employees of the bank. In view of the gross frauds and manner of jumbling records and figures resorted to by employees of the bank, and the further fact that appellant is illiterate, and, perhaps, like a great number of other people, transacts business in a loose and inaccurate manner, we do not think that the mere fact that he received no receipt for his alleged deposit is sufficient evidence to warrant the conclusion that it was for a fraudulent purpose and that he thereby became a conspirator. It is disclosed by the record that a number of other customers of the bank were credited with the saving ac-

count funds of other customers of which they had no knowledge. But there is no question raised about any such transactions except with appellant.

Among those credited with the saving account funds of other customers are men of prominence, and whose honesty and integrity are not questioned. The commonwealth seeks to make appellant an exception because he drew checks on the bank without the bank records showing he had made deposits to cover same. But this is not to be considered an unusual occurrence. It is common knowledge that a great many banks permit customers to overdraw their accounts. Taking into consideration the uncontradicted testimony of appellant, that he made those numerous deposits during the time it is alleged the conspiracy of appellant and employees of the bank was in process, it fairly warrants the inference that appellant drew his checks on the bank in good faith.

It is a well-established rule that this court will not interrupt a finding of fact by a jury if there is any evidence of a probative nature carrying the weight of evidence. But, if there is any evidence in this record conducing to show the guilt of appellant, it is the mere circumstance that the bank records do not disclose that he made the alleged deposits of the Wood Mosaic Company checks for which he received no receipt, and that the bank permitted him to overdraw his account. But, in view of the numerous and flagrant frauds on the part of the employees of the bank, we do not think that the fact that they gave appellant no receipt for his alleged deposit and permitted him to overdraw his account is sufficient to warrant a conviction. It is our conclusion that the verdict of the jury is palpably and flagrantly against the weight of the evidence and insufficient to warrant a conviction. It will not be necessary to pass on other questions raised by briefs of counsel.

The judgment is reversed and remanded for proceedings consistent herewith.

Whole court sitting.